**Jerry C. RILEY, Petitioner,**

v.

**Kurt JONES, Respondent.**

No. 03–10316.

United States District Court,
E.D. Michigan,
Southern Division.

March 5, 2007.

Jerry Riley, Kincheloe, MI, Pro se.

Janet Van Cleve, Department of Attorney General, Lansing, MI, for Respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

LAWSON, District Judge.

The petitioner, Jerry Riley, currently confined at Chippewa Correctional Facility

in Kincheloe, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of two counts of first-degree murder, Mich. Comp. Laws § 750.316(1)(a), two counts of felony murder, Mich. Comp. Laws § 750.316(1)(b), one count of conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a, one count of armed robbery, Mich. Comp. Laws § 750.529, four counts of assault with intent to rob while armed, Mich. Comp. Laws § 750.89, one count of assault with intent to murder, Mich. Comp. Laws § 750.83, and one count of possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b, following a jury trial in the Washtenaw County, Michigan circuit court in 1999. He was sentenced to two years in prison for the felony firearm conviction followed by concurrent terms of life imprisonment for the remaining convictions. The petitioner alleges that he is in custody in violation of federal law because he was denied effective assistance of appellate counsel. The respondent filed a response to the petition asserting that the claims are procedurally defaulted and lack merit. The Court concludes that the petitioner's claims are not procedurally defaulted, but they do lack merit. The petition therefore will be denied.

## I.

The petitioner's convictions arise from "the armed robbery of a Pittsfield Township moving and storage business in March 1997, during which two employees, Neal Green and Duane Holder, were shot and killed, and the owner of the business, David Pepper, was shot and suffered a traumatic brain injury that left him paralyzed." *People v. Riley*, No. 219815, 2000 WL 33391083, at *1 (Mich.Ct.App. Dec. 15, 2000) (unpublished opinion). The petitioner's trial lasted from March 29 through April 2, 1999 in Washtenaw County, Michi-

gan. Although African Americans constitute twelve percent of the population of Washtenaw County, none were represented in the venire. The petitioner is of African American descent.

Werner Isaac, the petitioner's cousin and the driver of the get-away car, testified against the petitioner at trial in exchange for having all charges against him but one (armed robbery) dismissed. Isaac testified that he participated in the robbery but went to get the car before the shooting. When he came around with the car to pick up the petitioner, the petitioner told Isaac "that he shot the people." Trial Tr. vol. II, 378, Mar. 30, 1999.

On cross-examination, the petitioner's trial counsel questioned Isaac about a letter he had written to Sherry Riley, the petitioner's sister and Isaac's cousin, before Isaac entered into his agreement with the prosecution to testify. In the letter, Isaac told Ms. Riley that he was at home during the robbery, had nothing to do with the crimes, and would do anything for the petitioner. This was inconsistent with Isaac's trial testimony that he participated in the crimes.

On redirect, the prosecutor moved to admit the entire letter. The trial court ruled that the letter itself was not admissible, but the prosecutor could question Isaac about the letter's contents. Based on this ruling, the petitioner's trial counsel agreed to let the prosecutor offer the entire letter into evidence. The letter contained the following statement: "You know that they know he was there and that he did what he did." Trial. Tr. vol. III, 496, Mar. 31, 1999. Isaac testified that "he" was a reference to the petitioner. On recross-examination, the petitioner's trial counsel elicited an admission from Isaac that he had asked Sherry Riley to convince the petitioner to lie about Isaac's role in the robbery.

David Pepper testified and identified the petitioner as the person who robbed and shot him. The petitioner was a former employee of Pepper's. Although the gunmen wore masks, Pepper recognized the petitioner during the robbery by his voice, his build, the shape of his eyes, and his gait. Pepper was in a coma after the shooting and could not remember who shot him when he first awoke. Pepper remembered being robbed by the petitioner, but he initially did not recall that the robbery and the shooting occurred on the same night. Pepper stated that his memory of the shooting returned suddenly while he was watching television with his wife. He testified that the police did not bring him any pictures of the petitioner before he recalled that the petitioner shot him.

Lieutenant. Donald O'Farrell had given Pepper's wife a photograph of the petitioner as a security measure while the petitioner was a suspect and still at large. Apparently Pepper was unaware of this fact. At trial, Pepper testified that he did not know whether his wife had a picture of the petitioner or why she would have his photograph. Pepper stated that his wife was adamant about not discussing the shooting with him. Lieutenant O'Farrell testified that he gave the photo to Pepper's wife, but he did not know whether he did so before or after Pepper remembered who shot him.

Dr. Karen Price, a neuropsychologist, testified in the prosecution's case-in-chief that she treated David Pepper on the rehabilitation unit of St. Joseph Mercy Hospital. Dr. Price testified that Pepper was able to remember who had shot him within months of his injury and provided the police with the name "Jerry."

The petitioner testified in his own defense. The petitioner's theory was that Pepper's testimony was unreliable due to his brain injury and Isaac was not credible because his testimony was bought and paid for. On cross-examination, the prosecutor asked the petitioner if he had been at any area hospitals during the summer of 1997. The petitioner testified that his grandmother had been in the hospital for problems with her appendix, and he had visited her once or twice. The petitioner was unable to recall the name of the hospital where his grandmother was treated.

The prosecutor recalled Dr. Price as a rebuttal witness the day after the defense rested. The trial court permitted Dr. Price to testify that, after her previous testimony, she called the prosecutor's office to say that she had recognized the petitioner. She identified the petitioner as someone she saw approximately ten times during a period of about one month in the hospital where she worked with neurological patients. There are no waiting rooms or chairs in the area where she claimed to have seen the petitioner. The trial court refused to allow the petitioner to rebut Dr. Price's testimony. The petitioner wanted to introduce evidence of his grandmother's hospital stay and that he may have been observed during one of his visits to see her, but this testimony was not permitted. During closing argument, the prosecutor argued that Dr. Price's testimony supported an inference that the petitioner had gone to the hospital to kill Mr. Pepper.

As noted above, the petitioner was found guilty of two counts of first-degree murder, two counts of felony murder, one count of conspiracy to commit armed robbery, one count of armed robbery, four counts of assault with intent to rob while armed, one count of assault with intent to murder, and one count of possession of a firearm during the commission of a felony (felony firearm). The trial court sentenced the petitioner to the various prison terms mentioned earlier.

In his direct appeal to the Michigan Court of Appeals, the petitioner argued

through counsel that (1) Dr. Price should not have been permitted to testify in rebuttal that she had seen the defendant in the hallways of the hospital where she was treating Pepper; (2) convictions on two counts of first degree murder and two counts of felony murder for the deaths of Duane Holder and Neal Green violated double jeopardy principles; and (3) convictions for felony murder and the predicate felony offenses of assault with intent to rob while armed violated double jeopardy principles. The court of appeals concluded that the admission of Dr. Price's rebuttal testimony was improper but harmless error. The court of appeals agreed with the petitioner's double jeopardy arguments, vacated the two convictions for assault with intent to rob Holder and Green, and remanded the case to modify the judgment of sentence to show that the petitioner received a single conviction for each count of first-degree murder supported by two theories.

The petitioner then filed an application for leave to appeal in the Michigan Supreme Court where he raised the same claim about Dr. Price's rebuttal testimony. He also moved to add the following new issues:

II. The court should have suppressed the testimony of the alleged accomplice Werner Isaac who testified in exchange for leniency from the prosecution in violation of MCL 775.7; MSA 28.1244.

III. The admission of the complainant's [David Pepper's] in-court identification of defendant at trial denied defendant a fair trial and the effective assistance of counsel, where it was the product of a suggestive identification where the witness received a notice to appear in court for *People v. Riley* and no independent basis was established.

IV. Defendant was denied the effective assistance of [trial] counsel when counsel failed to move to suppress the testimony of the alleged accomplice and failed to move prior to trial to suppress the identification.

V. Defendant was denied the effective assistance of appellate counsel where his lawyer failed to raise meritorious issues.

On July 30, 2001, the supreme court denied the petitioner's motion and his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. *People v. Riley*, 465 Mich. 856, 631 N.W.2d 345 (2001) (table).

On or about October 16, 2001, the petitioner filed a motion for relief from judgment in which he raised all the claims currently pending before this Court. The trial court denied the motion after concluding that the petitioner's claim of ineffective assistance of appellate counsel failed as an independent basis for relief and as "good cause" for failing to raise the issues on appeal.

The petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal, stating that the petitioner had failed "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Riley*, No. 222117, 2001 WL 1512082 (Mich.Ct.App. Feb. 11, 2003) (unpublished decision). The Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Riley*, 469 Mich. 864, 666 N.W.2d 673 (2003) (table). The petitioner signed and dated his habeas petition on December 5, 2003. The petition raises the following claims:

I. Petitioner was denied the effective assistance of appellate counsel, as a result of appellate counsel's failure to raise the issue, that the trial court

clearly erred, by allowing an impermissibly suggestive in court identification of petitioner by Dr. Karen Price.

II. Petitioner was denied the effective assistance of appellate counsel, as a result of appellate counsel's failure to raise an ineffective assistance of counsel claim against trial counsel, based on trial counsel's failure to object and move to suppress the identification of petitioner by witness David Pepper.

III. Petitioner was denied the effective assistance of appellate counsel, as a result of appellate counsel's failure to (A) confer and or discuss the merits of the issues raised on petitioner's behalf, and (B) by appellate counsel's failure to raise petitioner's requested issues.

IV. Petitioner was denied the effective assistance of appellate counsel, as a result of appellate counsel's failure to raise the issue that the trial court erred by refusing to allow petitioner to testify after erroneously allowing the prosecution's witness, Dr. Karen Price, to rebut testimony not submitted on direct examination.

V. Petitioner was denied the effective assistance of appellate counsel, as a result of appellate counsel's failure to raise the issue that was objected to, and preserved for appellate review by trial counsel, that the jury venire was not a fair representation of the cross-section of the community.

VI. Petitioner was denied the effective assistance of appellate counsel, as a result of appellate counsel's failure to raise the issue that the trial counsel erred by allowing a letter written by Warner Isaac to be entered into evidence.

VII. The admitted rebuttal testimony of Dr. Karen Price was not harmless error where the testimony itself was used to show consciousness of guilt and inject a new issue not submitted in prosecutor's case-in-chief, error was not harmless because it denied petitioner a fair trial and led to other errors of constitutional dimension.

VIII. Petitioner was denied the effective assistance of appellate counsel, as a result of appellate counsel's failure to raise the issue, that the cumulative effects of the trial court's, and trial counsel's errors denied petitioner his constitutional right to a fair trial.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Feder-

al law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520–21, 123 S.Ct. 2527 (quoting *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistin-

guishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405–06, 120 S.Ct. 1495.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable....

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410–11, 120 S.Ct. 1495. *See also Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir.2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir.2006); *Harbison v. Bell*, 408 F.3d 823, 828–29 (6th Cir.2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir.2003) (en banc).

### A.

▮▮▮ The respondent argues that the petitioner's claims are procedurally defaulted because the petitioner failed to raise his claims on direct review of his convictions. Habeas relief may be precluded on claims that a petitioner has not

presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe,* 951 F.2d 94 (6th Cir.1991). The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Application of the cause-and-prejudice bar may be avoided if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent,* 17 F.3d 155, 162 (6th Cir.1994); *see Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■■ For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle,* 260 F.3d 684, 693 (6th Cir.2001); *see also Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir.1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546. Finally, the procedural default must rest on an "adequate and independent" state ground. *Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir.2005). Whether the independent state ground is adequate to support the judgment is itself a federal

question. *Lee v. Kemna,* 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002).

■ The respondent argues that the petitioner's claims are barred by procedural default because he failed to raise them on direct review and the Michigan courts denied the petitioner's motion for relief based on Michigan Court Rule 6.508(D). The trial court did cite Michigan Court Rule 6.508(D)(3), which prohibit state courts from granting relief on claims that "could have been raised on appeal from the conviction and sentence or in a prior motion," in its decision denying the petitioner's motion. The Sixth Circuit has held that Michigan Court Rule 6.508(D)(3) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice. *Luberda v. Trippett,* 211 F.3d 1004, 1007 (6th Cir.2000). However, it appears that the trial court misconstrued the petitioner's claims. For example, the trial court stated as follows regarding the first claim raised by the petitioner in his motion for relief from judgment:

> The defendant claims that he was denied a fair trial because witness, Karen Price, was allowed to identify him as someone she had seen in the hallways of St. Joseph Mercy Hospital. The defendant did not raise this issue on of appeal [sic], but claims he has good cause for not doing so in that his appellate counsel was ineffective.

Order Denying Mot. Relief From Judgment, No. 98–9944 FC, at 3 (Apr. 11, 2002). However, in his motion for relief from judgment, the petitioner was not alleging a defaulted claim and asserting ineffective assistance as excuse; rather, he was asserting ineffective assistance of appellate counsel as an independent basis for the requested relief. The petitioner's motion stated his claim as follows:

Defendant was denied the effective assistance of appellate counsel, as a result of appellate counsel's failure to raise the issue that the trial court abused it's [sic] discretion, when they allowed the impermissibly suggestive in-court identification of defendant by Dr. Karen Price.

The trial court made the same mistake regarding the rest of the petitioner's ineffective assistance of appellate counsel claims. The respondent's argument that these claims are procedurally defaulted because the petitioner did not raise them on direct appeal must be rejected. Ineffective assistance of appellate counsel claims plainly cannot be raised on direct appeal as they do not arise before the appeal. *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir.2004) ("Petitioner did not procedurally default his claim of ineffective assistance of appellate counsel. State collateral review was the first opportunity that petitioner had to raise this claim."). The petitioner raised his ineffective assistance of appellate counsel claims at his first opportunity to do so, in his motion for relief from judgment. See *Tucker v. Renico*, 317 F.Supp.2d 766, 772–73 (E.D.Mich. 2004).

 The only claim asserted by the petitioner that is not based on ineffective assistance of counsel is his seventh claim, which alleges that the admission of Dr. Price's rebuttal testimony denied him a fair trial. This claim also is not procedurally defaulted. The petitioner raised this claim on direct review, and the court of appeals considered the claim on its merits. The Court therefore concludes that the petitioner's claims are not procedurally defaulted.

 The respondent also argues that the claim regarding Dr. Price's rebuttal testimony is unexhausted. The doctrine of exhaustion of state remedies requires state prisoners to "fairly present" their claims as federal constitutional issues in the state courts before raising those claims in a federal habeas corpus petition. See 28 U.S.C. §§ 2254(b)(1)(A) and 2254(c); *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the state's established appellate review process, including a petition for discretionary review to a state supreme court. *O'Sullivan*, 526 U.S. at 845, 119 S.Ct. 1728. This claim is exhausted because the petitioner raised it on direct appeal to the Michigan Court of Appeals and in his application for leave to appeal in the Michigan Supreme Court.

## B.

 The petitioner's seventh claim is that the trial court's decision allowing Dr. Price's rebuttal testimony denied him a fair trial. The petitioner raised this claim in his direct appeal when he argued that the trial court abused its discretion by permitting Dr. Price's rebuttal testimony because that testimony was not responsive to evidence introduced by the defense. The Michigan Court of Appeals agreed that the admission of Dr. Price's rebuttal testimony was error because

nothing in [the petitioner's] direct testimony supported admission of the challenged testimony on rebuttal; rather, his denials with respect to having been at any of the area hospitals during the summer of 1997 came during the prosecutor's cross-examination and were, thus, not the proper subject of rebuttal.

*Riley*, 2000 WL 33391083, at *1. The court of appeals also determined that "the prosecutor inappropriately argued during closing argument that the rebuttal testimony

supported an inference that [the petitioner] had gone to the hospital hoping to 'eliminate' the witness he had left behind." *Ibid.* The court nevertheless found that the errors were harmless because there was no probability, given the untainted evidence, that a different outcome would have resulted absent the error. Although not citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the state court's conclusion complies with the rule set forth by the Supreme Court that the states must apply on direct review when evaluating the effect of non-structural constitutional error in criminal proceedings. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24, 87 S.Ct. 824.

Federal courts on habeas review must apply the "less strict ... measure of harmlessness" set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *O'Neal v. McAninch*, 513 U.S. 432, 438, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). The *Brecht* test "for determining whether habeas relief must be granted is whether the ... error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623, 113 S.Ct. 1710 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The Sixth Circuit has held that the *Brecht* test survived the amendments to 28 U.S.C. § 2254 enacted by the AEDPA. *See Nevers v. Killinger*, 169 F.3d 352, 371 (6th Cir.1999). A federal court need not specifically analyze whether the state's application of the *Chapman* test constitutes an unreasonable application of federal law under 28 U.S.C. § 2254(d)(2), however, since a "petitioner [who] is able to make [the *Brecht* ] showing ... will surely have demonstrated that the state court's finding that the error was harmless beyond a reasonable doubt was outside the realm of

plausible credible outcomes, and therefore resulted from an unreasonable application of *Chapman.*" *Barker v. Yukins*, 199 F.3d 867, 872 (6th Cir.1999) (citing *Nevers*, 169 F.3d at 371–72). In other words, the "unreasonable application" test promulgated by the AEDPA is subsumed by the *Brecht* analysis.

The *Brecht* test requires the Court to assess the impact of the constitutional error on the jury's decision. It requires an analysis that is different than simply measuring the sufficiency of the evidence after subtracting the offending item. As the Sixth Circuit explained, "The *Brecht* test does not say 'only errors that turn acquittals into convictions are harmful.' As Justice Stevens put it in *Brecht*, the question is not were they [the jurors] right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision." *Kyger v. Carlton*, 146 F.3d 374, 382 (6th Cir.1998) (quoting *Brecht*, 507 U.S. at 642–43, 113 S.Ct. 1710 (Stevens, J., concurring)). "[I]t is improper in a *Brecht* inquiry to focus on the sufficiency of the untainted evidence." *Ibid.*

Applying the *Brecht* standard, this Court agrees with the court of appeals that the error was harmless and did not have " 'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623, 113 S.Ct. 1710 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Certainly there was other testimony presented that the petitioner committed the robbery and the shootings, including David Pepper's eye-witness testimony. Dr. Price's improper rebuttal testimony was harmless because it did not implicate the petitioner in the actual crime, it did not prove prior or subsequent acts amounting to misconduct, and it was

not inherently prejudicial. True, the prosecutor asked the jury to draw an incriminating inference from the evidence that the plaintiff had gone to the hospital where one of the crime victims was treated, but this conclusion did not come from Dr. Price's testimony itself. The state court's conclusion that the error was harmless did not unreasonably apply Supreme Court precedent.

### C.

▮ The petitioner's remaining claims allege ineffective assistance of appellate counsel. To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A court evaluating a claim of ineffective assistance of appellate counsel should consider several factors to determine whether counsel's performance fell below an objective standard of reasonableness, including:

1. Were the omitted issues "significant and obvious?"
2. Was there arguably contrary authority on the omitted issues?
3. Were the omitted issues clearly stronger than those presented?
4. Were the omitted issues objected to at trial?
5. Were the trial court's rulings subject to deference on appeal?
6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7. What was the appellate counsel's level of experience and expertise?
8. Did the petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427–28 (6th Cir.1999); *see also Franklin v. Anderson,* 434 F.3d 412, 429 (6th Cir.2006). Appellate counsel need not raise every nonfrivolous argument on direct appeal, but he or she must exercise reasonable professional judgment. *Joshua v. DeWitt,* 341 F.3d 430, 441, (6th Cir.2003) (citing *Jones v. Barnes,* 463 U.S. 745, 751–53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). When ignored issues are clearly stronger than those presented, the presumption of effective assistance of appellate counsel is overcome. *Ibid.* A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal.

### 1.

▮ The petitioner first claims that his appellate attorney was ineffective for failing to raise the issue of Dr. Price's impermissibly suggestive in-court identification during her rebuttal testimony. The petitioner's appellate lawyer raised a similar issue on direct review when he argued that the trial court abused its discretion by permitting Dr. Price's rebuttal testimony because that testimony was not responsive to evidence introduced by the defense. The petitioner asserts that unnecessarily suggestive identification procedures are conducive to irreparable misidentification and that his appellate attorney also should have objected to Dr. Price's testimony on this ground during his direct appeal. The petitioner raised this claim in the trial court on his motion for relief from judg-

ment. The trial court rejected the claim based on the court of appeals' conclusion that the petitioner was not prejudiced by Dr. Price's rebuttal testimony and because Dr. Price did not implicate the petitioner in any criminal activity. Order Denying Mot. Relief From Judgment, Washtenaw County Cir. Ct. No. 98–9944 FC, at 3–4 (Apr. 11, 2002).

This Court agrees with the trial court that appellate counsel was not ineffective for failing to raise the identification issue on direct appeal. The omitted issue was closely related to the issue that appellate counsel did raise on appeal and that issue was rejected by the court of appeals as harmless error. Even if appellate counsel was deficient for failing to raise the claim as presently styled, the alleged deficiency did not prejudice the petitioner because David Pepper identified the petitioner at trial as the person who shot him. In addition, Werner Isaac testified that he participated in the robbery and, although he left the premises before the shooting, the petitioner told Isaac that he had shot Green and Holder.

Moreover, Dr. Price never identified the petitioner as the robber, the shooter, or even as someone who was doing something improper when she saw him before trial. She merely identified the petitioner as someone she had seen in the hospital while she was working. She was not even certain whether David Pepper was a patient at the time.

There is no reasonable probability that the court of appeals would have reached a different result had appellate counsel raised the claim that Dr. Price's in-court identification of the petitioner was suggestive and conducive to irreparable misidentification. The Court therefore concludes that appellate counsel's alleged failure did not prejudice the defense and did not amount to ineffective assistance of counsel.

The petitioner is not entitled to habeas relief on this claim.

2.

■ The petitioner second habeas claim is that his appellate attorney was ineffective for failing to raise the issue of trial counsel's deficient representation. The petitioner states his trial counsel should have objected to, and moved to suppress, David Pepper's identification of the petitioner. The petitioner believes Pepper's wife showed his photograph to Pepper, whose memory was affected by his injury, and that trial counsel should have moved to suppress the in-court identification of the petitioner on the basis of an impermissibly suggestive photographic confrontation. He alleges that his appellate attorney's failure to argue this on appeal denied him effective assistance of counsel.

■ A conviction based on identification testimony that follows a pretrial photo identification violates the defendant's constitutional right to due process "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). It is the likelihood of misidentification that violates a defendant's due process right. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Here, review of the record shows that the victim knew the petitioner from their previous employment relationship. Pepper testified that he always knew the petitioner was involved in the incident because he remembered the petitioner robbing him. Initially, however, Pepper did not realize that the robbery and the shooting occurred on the same night. He claimed to have had independent recall of the shooting after coming out of a coma and

while watching television with his wife. Even if Pepper's wife had shown a photograph of the petitioner to her husband, Pepper's identification of the petitioner was supported by "sufficient independent indicia of reliability" because the petitioner and Pepper knew each other before the robbery and shooting occurred. *See Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir. 1986) (explaining that, if a pretrial encounter was unduly suggestive, courts must evaluate the "totality of the circumstances" to determine whether there are nevertheless sufficient independent indicia of reliability).

Moreover, there is no evidence in the record to support the petitioner's assertion that Pepper's wife showed the petitioner's photograph to her husband. Pepper testified that he did not know whether his wife had a picture of the petitioner or why she would have his photograph. He claimed that his wife was adamant about not discussing the matter with him. Pepper also stated that the police did not bring him any pictures of the petitioner before he recalled that the petitioner shot him.

> Furthermore, as the trial court recognized, the petitioner's attorney extensively cross-examined Mr. Pepper on his ability to identify [the petitioner]. Counsel inquired specifically about Mr. Pepper's memory issues and the photograph that was given to Mrs. Pepper. The defense attorney's choice to discredit the witness's testimony via cross-examination rather than object or move to suppress can be seen as legitimate trial strategy. If the defense attorney had objected to or moved to suppress the testimony it could have resulted in highlighting the testimony of Mr. Pepper in the eyes of the jury, which could have had a negative consequence at trial as well.

Order Denying Mot. Relief From Judgment, Washtenaw County Cir. Ct. No. 98–9944 FC, at 4 (Apr. 11, 2002). The trial court concluded that the lack of objection or motion to suppress David Pepper's identification testimony did not constitute ineffective assistance of trial counsel. The court further concluded that, because trial counsel was not ineffective, appellate counsel was not ineffective for failing to raise the issue on appeal. This Court agrees. Under the totality of these circumstances there was no substantial likelihood of misidentification at trial. Trial counsel's failure to object to, or move to suppress, David Pepper's identification of the petitioner did not amount to deficient performance. Because trial counsel performed adequately, the Court's inquiry "is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell,* 264 F.3d at 676. The trial court rejection of this claim did not unreasonably apply *Strickland.* The petitioner is not entitled to habeas relief on this issue.

### 3.

▮ The petitioner fourth claim is that his appellate attorney was ineffective for failing to raise the issue of the trial court's refusal to permit the petitioner to testify in surrebuttal after Dr. Price testified for the second time. Dr. Price testified on rebuttal that she saw the petitioner at St. Joseph Mercy Hospital some time during the six-month period before October of 1997 when she quit her job. The petitioner contends that he should have been permitted to rebut this testimony to explain why he might have been observed at the hospital. He claims that the trial court's refusal to let him testify in surrebuttal violated his constitutional rights to a fair trial, to confront witnesses, and to present a defense. The trial court concluded in ruling on the post-conviction motion that the claim lacked merit because Dr. Price's testimony did not prejudice the petitioner.

 Criminal defendants possess a constitutional right to confront witnesses and to present a defense. *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Chambers v. Mississippi,* 410 U.S. 284, 294, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). "Restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Michigan v. Lucas,* 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (quoting *Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).

However, "the right to present relevant testimony is not without limitation. The right 'may in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock v. Arkansas,* 483 U.S. at 55, 107 S.Ct. 2704 (quoting *Chambers v. Mississippi,* 410 U.S. at 295, 93 S.Ct. 1038). The Supreme Court has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused" or "undermined fundamental elements of the defendant's defense." *United States v. Scheffer,* 523 U.S. 303, 308, 315, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998).

Dr. Price testified on rebuttal that she observed the petitioner on approximately ten different occasions over a period of about a month in 1997. The petitioner alleges that he wanted to introduce testimony about his grandmother's hospital stay and the fact that he may have been observed during one of his visits to see her. He had already testified, however, that he did not recall going to St. Joseph Mercy Hospital during 1997, he did not know the name of the hospital where his grandmother was treated, she went there for a problem with her appendix, and he visited her only once or twice. The peti-

tioner could not have rebutted Dr. Price's testimony credibly, and the petitioner therefore cannot show that he was prejudiced by the trial court's refusal to allow him to do so. The petitioner is not entitled to habeas relief on this claim.

4.

 The petitioner's fifth claim is that the jury array did not represent a fair cross-section of the Washtenaw County community and that his appellate attorney should have raised this issue on appeal. The Sixth Amendment right to an impartial jury includes the right to a jury drawn from a "fair cross section of the community." *Taylor v. Louisiana,* 419 U.S. 522, 530, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). "Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* at 538, 95 S.Ct. 692 (internal citations omitted).

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

The petitioner is an African American, and African Americans are a distinctive group for purposes of Sixth Amendment analysis and the *Duren* test. *Randolph v. California,* 380 F.3d 1133, 1140 (9th Cir.

2004). The petitioner claims that the entire jury venire did not include any African Americans and that African Americans constitute twelve percent of the county population.

The petitioner has not alleged the percentage of African Americans who were eligible for jury duty in Washtenaw County at the time of his trial. Nor has he shown that African Americans were systematically excluded from jury venires in Washtenaw County at the time. The petitioner has failed to establish that there were facts from which his appellate attorney could have argued that the jury array violated his right to be tried by a fair cross-section of the community. The Court therefore finds that defense counsel was not ineffective for failing to attack the venire as being unrepresentative of the African American population in Washtenaw County.

The petitioner nevertheless alleges that his attorney should have investigated the facts underlying this claim. An exhibit attached to the habeas petition, however, indicates that appellate counsel did consider, and rejected, the "fair cross section" issue. In a letter dated August 7, 2000, the petitioner's appellate attorney referred to a letter she previously had written to him: "My letter of April 3, 2000, which confirmed our discussions at our March 17, 2000 meeting at the Saginaw Correctional Facility, ... explained, in great detail, why I rejected the potential issues of 'fair cross section.'" Pet. for Writ of Habeas Corpus Ex. 11, Letter from R. Lerg (Aug. 7, 2000). The petitioner, not surprisingly, has failed to submit the April 3 letter. The petitioner's appellate counsel apparently did investigate whether such a claim was warranted and determined that it was not. The petitioner has not submitted any evidence from which this Court can conclude otherwise. The petitioner is not entitled to habeas relief on this claim.

5.

 The petitioner's sixth claim alleges that appellate counsel should have asserted a claim about the admission of a letter written by Werner Isaac. In a February 1998 statement to the police, Isaac admitted participating in the robbery. Yet in the letter written on April 13, 1998 to Isaac's cousin and the petitioner's sister Sherry Riley, Isaac denied having anything to do with the robbery or the murders, which was in direct contradiction to his direct testimony and his statement to the police in February 1998. In the letter, Isaac also asked Ms. Riley to convince the petitioner to tell the police that Isaac was not involved in the crimes. The petitioner's trial counsel used the letter to challenge Isaac's credibility during cross-examination. Defense counsel's argument was that the letter, along with the plea agreement Isaac entered into and various other inconsistent statements he made, showed that Isaac could not be trusted and was testifying to obtain a shorter prison sentence.

On redirect examination, the prosecutor sought to introduce the entire letter as evidence. The letter also included the statement, "You know that they know he was there and that he did what he did." The prosecutor believed this was a prior consistent statement that could be used to rehabilitate the witness and that the letter was therefore admissible. Defense counsel objected, and the trial court sustained the objection. The court concluded that the letter was not admissible under Michigan Rule of Evidence 613 because Isaac had not denied making the prior inconsistent statement, but that the prosecutor could question the witness about the contents of the letter:

> The Court's concern here is that if the exhibit is admitted, the jury may use it as substantive evidence and I think that

would be error. In order, though, to hopefully meet the interest of justice and fairness here, I agree that Mr. Ritchie [defense counsel] has used this letter with the witness, has questioned the witness about what he wrote in the letter. The Court is going to allow the Prosecutor the same leeway as to statements made in the letter but then the letter itself will not be admitted.

Trial Tr. vol. III, 491, Mar. 31, 1999. The petitioner's trial counsel then agreed to the admission of the letter:

If you're going to let him [the prosecutor] cross examine everything in there, I'd just as soon see the whole doggone thing. Now, I'm saying to him I don't want to lose my objection—want to lose my preservation for appeal issue. So as far as I'm concerned, to have him—if they're going to be able to pick and choose something to ask about to rehabilitate him, let him have the whole doggone thing.

Trial Tr. vol. III, 494, Mar. 31, 1999.

■■■ The petitioner's appellate counsel was not ineffective for failing to raise the admission of the letter on appeal. Faced with a questionable ruling by the trial judge permitting the prosecutor to examine Isaac on the rest of the letter, the defendant's trial attorney made a strategic decision to allow the entire letter into evidence. Trial counsel reasonably could conclude that allowing the jury to see the entire letter in context in the witness's own hand could have persuaded them that Isaac's testimony was not credible. Nor can the petitioner show that he was prejudiced by the admission of the letter. For all this Court knows, the jury did not believe Isaac's testimony and instead based its conviction on the testimony of David Peppers, who testified that the petitioner robbed and shot him. In all events, the strategic decision by trial counsel, and the judgment of the appellate counsel not

to raise the issue on appeal, cannot constitute deficient performance under the indulgent *Strickland* standard. The petitioner is not entitled to habeas relief on this claim.

### 6.

■■■ The petitioner's third claim is that appellate counsel was ineffective because she failed to confer with him about the issues that were raised on appeal and refused to raise the issues he suggested.

The trial court noted on review of this claim that the petitioner and his attorney engaged in "continued correspondence." Exhibits to the habeas petition support the trial court's finding on this matter. *See* Pet. for Writ of Habeas Corpus, Exs. 4–12. Moreover, one of appellate counsel's responses to the petitioner's letters indicates that she and the petitioner discussed potential issues during a face-to-face meeting on March 17, 2000. Pet. for Writ of Habeas Corpus, Ex. 11. In the same letter, appellate counsel referenced a previous letter in which she explained in great detail why she rejected certain potential issues. The record states that the petitioner and his appellate counsel met and went over possible issues and that counsel reviewed the facts. The petitioner cannot show that his appellate attorney was deficient in failing to confer with him.

■■■ The petitioner also claims that his appellate attorney refused to raise issues he suggested on appeal. Those issues include the claims discussed above as well as claims that Dr. Price and Pepper committed perjury and the prosecutor engaged in misconduct. As noted above, appellate counsel's failure to raise claims regarding Dr. Price's in-court identification and rebuttal testimony, trial counsel's performance, and the jury venire's racial make-up does not constitute ineffective assistance because those claims are without merit.

In addition, the petitioner's brief fails to point to testimony by Dr. Price or Mr. Pepper that constitutes perjury. Nor has the petitioner explained how the prosecutor engaged in misconduct. Because the plaintiff has not shown that these arguments, if raised on appeal, would have changed the outcome of his appeal, he cannot show prejudice by his appellate counsel's alleged deficient performance as *Strickland* requires. The petitioner is not entitled to habeas relief on this claim.

### 7.

The petitioner's final claim alleges that his appellate attorney was ineffective for failing to argue that the cumulative effect of the above errors denied the petitioner his right to a fair trial. Michigan courts have held that the "cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v. Dobek*, 274 Mich.App. 58, —— N.W.2d ——, 2007 WL 257625 (2007). However, reversal is unwarranted where the only errors found are minor and did not deny the petitioner a fair trial. *Ibid.* Moreover, the Supreme Court has never held that cumulative errors may form the basis for issuance of a writ of habeas corpus. *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.2002). In this case, the only errors found is the trial court's decision to allow Dr. Price to testify in rebuttal on matters not the proper subject of rebuttal. As noted, however, the petitioner was not denied a fair trial by this testimony, and he is not entitled to habeas relief on this claim.

### III.

For the foregoing reasons, the Court finds the petitioner has not shown that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.